**Electronically Filed
Intermediate Court of Appeals
CAAP-19-0000589
29-APR-2021
07:58 AM
Dkt. 53 MO**

NO. CAAP-19-0000589

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


NORMAN INOUE, AND ALL OTHERS SIMILARLY SITUATED,
Plaintiffs-Appellants,
v.
HARBOR LEGAL GROUP AND LAW OFFICES OF G. ANTHONY YUTHAS,
Defendants-Appellees


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 19-1-0495)


MEMORANDUM OPINION
(By:  Ginoza, Chief Judge, Wadsworth and Nakasone, JJ.)

Plaintiff-Appellant Norman Inoue (**Inoue**) appeals from an "Order Granting Defendant Harbor Legal Group, LLC's Motion to Compel Arbitration or in the Alternative Dismiss the Complaint," (**Order Compelling Arbitration**) filed on August 8, 2019, in the Circuit Court of the First Circuit (**Circuit Court**).[1]

On appeal, Inoue contends the Circuit Court erred by granting a motion to compel arbitration filed by Defendant-Appellee Harbor Legal Group, LLC, also known as The Law Offices of G. Anthony Yuthas (**HLG**).  Inoue asserts the Circuit Court improperly severed the arbitration clause from the contract at issue, rather than applying the plain language of Hawaii Revised

---

[1]  The Honorable Jeffrey P. Crabtree presided.

Statutes (**HRS**) § 446-2 (2013 Repl.) which Inoue contends dictates that the entire contract is void and unenforceable, including the arbitration clause.

Based on precedent by the United States Supreme Court and the Hawaiʻi Supreme Court, we conclude the Circuit Court correctly issued the Order Compelling Arbitration and therefore we affirm.

## I.  Background

Inoue initiated this lawsuit by filing a "Class Action Complaint" (**Complaint**) alleging that, pursuant to HRS § 446-2, for-profit debt adjusting is illegal in Hawaiʻi and that HLG is a for-profit debt adjuster conducting business in Hawaiʻi.  The Complaint alleges Inoue hired HLG in October 2015 as a debt adjuster to help him manage his debts, he entered into an agreement with HLG, he paid various fees to HLG and deposited a certain amount with HLG each month to adjust and pay his debts, but that subsequently HLG's services were unsuccessful and Inoue was sued by his creditors.  The Complaint further contends that HLG is a law office in Colorado and is not licensed in Hawaiʻi. The Complaint asserts that HLG violated HRS chapter 446 and HRS § 480-2 (2008 Repl.).

HLG brought a motion to compel arbitration, which the Circuit Court granted by issuing the Order Compelling Arbitration, stating in part:

> The Court finds that the parties entered into a broad and valid agreement to arbitrate any dispute which arose between them relating to Defendant's services.  The Court also finds that the subject matter of this dispute is arbitrable, and Plaintiff must pursue his claims, if at all, in arbitration. Therefore, the instant case is hereby stayed pursuant to Haw. Rev. Stat. § 658A-7(g).

Inoue contends the Circuit Court erred in compelling arbitration because debt adjusting services were outlawed in Hawaiʻi under HRS § 446-2 and "[t]he entire contract, including the arbitration clause within it, is void and unenforceable pursuant to [HRS § 446-2]."  The statute provides:

> **§ 446-2 Debt adjusting prohibited; penalty; contracts void.**  Any person who acts or offers to act as a debt adjuster in this State shall be fined not more than $500 or imprisoned not more than six months,

2

> or both.  Any contract for debt adjusting entered into with a person engaged in the business for a profit shall be void and unenforceable and the debtor may recover from the debt adjuster all sums or things deposited with the debt adjuster and not disbursed to the debtor's creditors.

Inoue's challenge to the arbitration provision is thus based on his challenge to the agreement as a whole.[2]

In response, HLG counters that Inoue entered into a Letter of Engagement (the **Agreement**) with HLG which contains a valid arbitration provision and the dispute falls squarely within the scope of the arbitration provision.  HLG asserts that Inoue's argument -- that the entire Agreement, including the arbitration provision, is void under HRS § 446-2 -- runs afoul of controlling decisions by the United States Supreme Court and Hawaii Supreme Court.  HLG first points to Gabriel v. Island Pacific Academy, Inc., 140 Hawaiʻi 325, 400 P.3d 526 (2017), under which a court determines the validity and enforceability of an arbitration agreement based on three elements: (1) it must be in writing; (2) it must be unambiguous as to the intent to submit the dispute to arbitration; and (3) there must be bilateral consideration.  Id. at 334, 400 P.3d at 535 (quoting Douglass v. Pflueger Hawaii, Inc., 110 Hawaiʻi 520, 531, 135 P.3d 129, 140 (2006) (quotation marks omitted)).  HLG asserts these elements were satisfied.  HLG further contends that, as a matter of substantive federal arbitration law that also applies in state courts, an arbitration provision is severable from the remainder of the contract, citing Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440 (2006), Southland Corp. v. Keating, 465 U.S. 1 (1984), Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395 (1967), and Siopes v. Kaiser Found. Heath Plan, Inc., 130 Hawaiʻi 437, 457 n.28, 312 P.3d 869, 889 n.28 (2013).

---

[2]  Inoue also cites to Narayan v. Ritz-Carlton Dev. Co., Inc., 140 Hawaiʻi 343, 400 P.3d 544 (2017), and argues that arbitration agreements, like other contracts, can be invalidated by generally applicable contract defenses such as fraud, duress or unconscionability.  However, Inoue did not raise such contract defenses to the arbitration provision in the Circuit Court, thus this argument is waived.

## II.  Standard of Review

The standard for appellate review of a motion to compel arbitration is the same as a motion for summary judgment.  Koolau Radiology, Inc. v. Queen's Med. Ctr., 73 Haw. 433, 439-40, 834 P.2d 1294, 1298 (1992).  The appellate court reviews "the circuit court's grant or denial of summary judgment de novo."  Querubin v. Thronas, 107 Hawaiʻi 48, 56, 109 P.3d 689, 697 (2005) (quoting Hawaiʻi Community Federal Credit Union v. Keka, 94 Hawaiʻi 213, 221, 11 P.3d 1, 9 (2000)).  The de novo review is "based upon the same evidentiary materials as were before [the trial court] in determination of the motion."  Koolau Radiology, 73 Haw. at 440, 834 P.2d at 1298 (internal quotation marks and citation omitted).

## III.  Discussion

"When presented with a motion to compel arbitration, the court is limited to answering two questions: 1) whether an arbitration agreement exists between the parties; and 2) if so, whether the subject matter of the dispute is arbitrable under such agreement."  Brown v. KFC Nat'l Mgmt. Co., 82 Hawaiʻi 226, 238, 921 P.2d 146, 158 (1996) (brackets and citation omitted).  Given Inoue's arguments on appeal –- that the entire Agreement is void and severance of the arbitration provision is not appropriate -- our focus is on the first question, whether an arbitration agreement exists between the parties.

There is no dispute that the Gabriel elements are met: the arbitration provision is in writing, there is an unambiguous intent to submit the dispute to arbitration, and there is bilateral consideration.  The arbitration clause in the Agreement states, in part:

> In the event of any controversy, claim or dispute between the Parties arising out of or relating to this agreement or the breach, termination, enforcement, performance, interpretation or validity thereof, including any determination of the scope or applicability of this agreement to arbitrate, shall be determined by arbitration in the county in which the Client [sic], in accordance with the laws of the state of the Client's residence.

The crux of this appeal is whether Inoue's contention that HRS § 446-2 voids the entire Agreement as illegal, also

4

voids the arbitration provision. Because Inoue's argument is not a specific challenge to the validity of the arbitration provision, we agree with HLG that under the prevailing case law the arbitration clause should be severed.

In Buckeye, the plaintiffs entered deferred-payment transactions with the defendant Buckeye Check Cashing, Inc., in which plaintiffs received cash in exchange for a personal check in the amount of the cash plus a finance charge. For each transaction there was an agreement that contained an arbitration provision. The plaintiffs filed a class action lawsuit in Florida state court "alleging that Buckeye charged usurious interest rates and that the Agreement violated various Florida lending and consumer-protection laws, rendering it criminal on its face." 546 U.S. at 443. Buckeye sought to compel arbitration. The trial court denied the motion to compel arbitration, the Florida court of appeal reversed, the Florida Supreme Court reversed the appellate court, and the case was accepted for review by the U.S. Supreme Court. Id.

The U.S. Supreme Court stated the issue before it as follows: "We decide whether a court or an arbitrator should consider the claim that a contract containing an arbitration provision is void for illegality." Id. at 442. The court first noted the application of the Federal Arbitration Act (FAA),[3] stating:

> To overcome judicial resistance to arbitration, Congress enacted the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1–16. Section 2 embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts:
>
> > "A written provision in ... a contract ... to settle by arbitration a controversy thereafter arising out of such contract ... or an agreement in writing to submit to arbitration an existing

---

[3] The FAA applies to written arbitration provisions in "any maritime transaction or a contract evidencing a transaction involving commerce[.]" 9 U.S.C. § 2 (1976). Thus, it "rests on the authority of Congress to enact substantive rules under the Commerce Clause[,]" and the substantive rules of the FAA apply in state and federal courts. Southland Corp., 465 U.S. at 11, 12. No party questions that the FAA applies in this case.

> controversy arising out of such a contract ...
> shall be valid, irrevocable, and enforceable,
> save upon such grounds as exist at law or in
> equity for the revocation of any contract."

Id. at 443-44.

The court then explained:

> Challenges to the validity of arbitration agreements "upon such grounds as exist at law or in equity for the revocation of any contract" can be divided into two types. **One type** challenges specifically the validity of the agreement to arbitrate. *See, e.g., Southland Corp. v. Keating*, 465 U.S. 1, 4-5, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984) (challenging the agreement to arbitrate as void under California law insofar as it purported to cover claims brought under the state Franchise Investment Law). **The other** challenges the contract as a whole, either on a ground that directly affects the entire agreement (*e.g.*, the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid. Respondents' claim is of this second type. The crux of the complaint is that the contract as a whole (including its arbitration provision) is rendered invalid by the usurious finance charge.
>
> In *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967), we addressed the question of who—court or arbitrator—decides these two types of challenges. The issue in the case was "whether a claim of fraud in the inducement of the entire contract is to be resolved by the federal court, or whether the matter is to be referred to the arbitrators." *Id.*, at 402, 87 S.Ct. 1801. Guided by § 4 of the FAA, we held that "if the claim is fraud in the inducement of the arbitration clause itself—an issue which goes to the making of the agreement to arbitrate—the federal court may proceed to adjudicate it. But the statutory language does not permit the federal court to consider claims of fraud in the inducement of the contract generally." *Id.*, at 403–404, 87 S.Ct. 1801 (internal quotation marks and footnote omitted). We rejected the view that the question of "severability" was one of state law, so that if state law held the arbitration provision not to be severable a challenge to the contract as a whole would be decided by the court. See id., at 400, 402–403, 87 S.Ct. 1801.
>
> Subsequently, in *Southland Corp.*, we held that the FAA "create[d] a body of federal substantive law," which was "applicable in state and federal courts." 465 U.S., at 12, 104 S.Ct. 852 (internal quotation marks omitted). We rejected the view that state law could bar enforcement of § 2, even in the context of state-law claims brought in state court. See id., at 10–14, 104 S.Ct. 852; see also Allied–Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 270–273, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995).
>
> . . .
>
> *Prima Paint* and *Southland* answer the question presented here by establishing three propositions. First, as a matter of substantive federal arbitration law, an arbitration

> provision is severable from the remainder of the contract. <u>Second, unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance.</u> <u>Third</u>, this arbitration law applies in state as well as federal courts. The parties have not requested, and we do not undertake, reconsideration of those holdings. Applying them to this case, <u>we conclude that because respondents challenge the Agreement, but not specifically its arbitration provisions, those provisions are enforceable apart from the remainder of the contract. The challenge should therefore be considered by an arbitrator, not a court</u>.

<u>Id.</u> at 444-46 (emphases added) (footnotes omitted).

In <u>Lee v. Heftel</u>, 81 Hawaiʻi 1, 911 P.2d 721 (1996), the appellants challenged a trial court's order compelling arbitration, asserting that fraud in the inducement was grounds to revoke the subject real estate contract such that the contract's arbitration clause was not enforceable. <u>Id.</u> at 2, 911 P.2d at 722. The Hawaiʻi Supreme Court analyzed <u>Prima Paint</u> and other federal case law and held that, "where no claim is made that fraud was directed to the arbitration clause itself, a broad arbitration clause will be held to encompass arbitration of the claim that the contract itself was induced by fraud." <u>Id.</u> at 4, 911 P.2d at 724 (quoting <u>Prima Paint</u>, 388 U.S. at 404).

Further, although not directly addressing the issue raised in this appeal, the Hawaiʻi Supreme Court in <u>Siopes</u> recognized that an arbitration provision is severable from the rest of a contract, including as recognized in <u>Buckeye</u>. In <u>Siopes</u>, the Hawaiʻi Supreme Court stated:

> In *Brown*, this court recognized that "[f]or almost forty years, arbitration agreements have been regarded, as a matter of federal law, as severable and distinct from the underlying agreement." 82 Hawaiʻi at 245, 921 P.2d at 165. The court held that generally, "an arbitration agreement is severable from the writing in which it is embedded." *Id.* at 246, 921 P.2d at 166. *See Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006) ("as a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract"); Richard A. Lord, 21 *Williston on Contracts* 245 (4th ed. 2001) ("Ordinarily, an arbitration clause will be treated as a separate contract, and severable from the main body of the contract. Thus, whenever possible, an arbitration clause will be held severable ....") (footnote omitted).

130 Hawaiʻi at 457 n.28, 312 P.3d 889 n.28.

7

Given the prevailing case authority discussed above, it was appropriate for the Circuit Court to sever the arbitration provision from the rest of the Agreement and to enforce the agreement to arbitrate.  Therefore, the Circuit Court was correct in granting HLG's motion to compel arbitration.

## IV.  Conclusion

Based on the above, we affirm the "Order Granting Defendant Harbor Legal Group, LLC's Motion to Compel Arbitration or in the Alternative Dismiss the Complaint," entered by the Circuit Court of the First Circuit on August 8, 2019.

DATED:  Honolulu, Hawaiʻi, April 29, 2021.

On the briefs:

Justin A. Brackett,
for Plaintiff-Appellant

Matthew T. Evans,
Joanna C. Zeigler,
(Damon Key Leong Kupchak
Hastert)
     and
Timothy D. Elliott,
(Rathje Woodward, LLC)
for Defendant-Appellee

/s/ Lisa M. Ginoza
Chief Judge

/s/ Clyde J. Wadsworth
Associate Judge

/s/ Karen T. Nakasone
Associate Judge